Good morning, your honors. I'm Richard Friedman with the Appellate Section of the Criminal Division. One way to understand why Minnesota v. Murphy controls this case is to consider how the Supreme Court compared the circumstances of the probationer to those of a grand jury witness. A grand jury witness is required to attend the questioning session, is required to answer the prosecutor's questions, and is required to tell the truth, all under threat of contempt. And he is not advised that he has any right under the Fifth Amendment not to incriminate himself. But if he gives an incriminating answer to a prosecutor's question, he will not be heard to complain that he didn't know he had a privilege, that he didn't understand the contours of the privilege, or that he believed that the requirement to truthfully answer the prosecutor's questions overrode the privilege. The Supreme Court said the probationer's circumstance is precisely comparable. Is the grand jury witness told when he goes in, if you don't answer every question, you will be sent to prison? He is not told that, and nor is the probationer told. Probation is told if you don't answer every question, you're in violation of the conditions of probation. That is correct, as is the grand jury witness told that he is sworn to tell the truth. That's different. I didn't say, is he told he must be truthful. I said, as the grand jury witness told, you must answer every question. As the Supreme Court explained, the only thing that is an infringement of the probationer's Fifth Amendment right is if he is told that he will be punished precisely if he invokes his Fifth Amendment privilege. He can be punished for not answering. He can be punished for lying. Well, it says there, the Supreme Court said, if they expressly or inferentially, I think, or by implication. Of course. And in this case, there's neither an objective nor a subjective basis for the probationer to believe. Well, there's no express statement that if you refuse to answer questions, your probation will be revoked. But they are told clearly that if you don't answer all questions, you're in violation of your conditions of probation. They're also told violation of conditions of probation is grounds for punishment. The Supreme Court drew the distinction that we rely upon. There is a difference between being told that if you invoke your privilege, you will be punished and being told that you must answer all questions. But doesn't this case come down to the difference in the conditions in Minnesota v. Murphy in this case? We don't think so for this reason. We have an authoritative interpretation by the Oregon Court of Appeals from 1995, which is discussed and reaffirmed in the most recent Gaither opinion that has been provided to the Court, that the precise condition of probation that defendant was under, this is the ten-bush decision, does not carry with it a threat of revoking probation for the invocation of the privilege. So we are bound, of course, that that is what objectively the condition means. There was nothing in the record to suggest that the probation officer said or did anything that would indicate to a reasonable person that the State was threatening revocation for the invocation of the privilege. And defendant has never asserted that he subjectively believed that he would be punished for the invocation of the privilege because his position has been he was completely unaware that he had a privilege. So both subjectively and objectively. Well, the Supreme Court declined to determine whether it was a purely objective test or subjective test, and they rejected Murphy's claim that he had either one. Well, because we know what the statute actually means under Oregon law, we know that no person could reasonably believe that Oregon actually did impose the penalty. There was nothing in the record nor any district court finding that the factual circumstances of this case what the probation officer said or did would cause any reasonable person to believe there was a penalty on the invocation of the privilege. And the defendant has claimed not that he subjectively believed that he had a privilege which was being overwritten, but he has claimed that he had no knowledge that he had any privilege whatsoever. So he has no subjective. 10 Bush, which you talked about, is a case just like Murphy where the requirement was that you be truthful. But 10 Bush involves it's an Oregon case. Yes, I know what it is. It involves this condition of probation. Well, that's not what it says when it discusses it. It's about truthfulness to say that he was required to tell them truthfully. Well, we believe. I think that Gaither, which comes afterwards, which you also mentioned, deals with this condition and says it's a violation. We respectfully urge the Court to read Gaither. Gaither deals with a condition that explicitly stated, and defendant was informed, that if he refused to divulge the details of offenses he committed prior to being put on probation, his probation would be revoked and he would be put in jail. And that is a penalty imposed precisely on a refusal to divulge prior criminality. And that is not this case. It's mentioned in Gaither, but there were other conditions as well that seemed to be what they were centering on. Oh, no. In Gaither, this was the condition that they found. The current condition, the one that we're dealing with, was mentioned in Gaither. Right. And they distinguished. But it doesn't appear to be what they were relying on. Correct. And they distinguished the condition involved in this case. I don't know if they distinguished. They just didn't rely on it, as I read. Well, we found that they reaffirmed 10 Bush, 10 Bush upholding this condition. The important thing is that it's not the subtle differences in the wording of, in Murphy, be truthful in all matters, or in this case, to promptly and truthfully answer all reasonable inquiries. The important point is whether it was communicated to the defender, not that he had to answer questions, not that he had to tell the truth, but whether it was communicated to the probationer that if he invoked his Fifth Amendment privilege, he would be punished for that, not for his failure to tell the truth, not for his failure to answer the question, but precisely because he sought to invoke his constitutional privilege. That's why this case is controlled by Murphy. Murphy essentially says, as I read it, that the condition in that case didn't say that he had to answer questions, it's just that if he answered them, he had to answer them truthfully. And here we do have a condition that says he had to answer the questions, as opposed to just that if he answered them, he had to answer them truthfully. As we have stated in our brief, and as we think Murphy fully supports, it is a lawful answer to an incriminatory question to state, I decline to answer on the grounds that it may incriminate me. And a grand jury witness is put in exactly the same position. Now, there are reasonable arguments as to why a probationer's circumstance is distinguishable from a grand jury witness. But the Supreme Court considered those and rejected them. And we're constrained to follow the resolution of this difficult question as Minnesota against Murphy as a result. Can you tell me where in Tenbush it says that they're construing this provision? Actually, that is made more clear in Gaither. I see. Tenbush does not even mention the provision. Oh, it mentions the truth-telling provision. Truth-telling, yes. But it's here. Not the provision that we are distinguishing between a truth-telling provision and a provision that says you are compelled to answer all questions. Neither. Just a minute. Yes, sir. Those are two different provisions. Now, you said that Tenbush answered the question of this provision. You said it's the same provision that you're compelled to answer all questions. It doesn't, in Tenbush, I now gather, anywhere mention any such provision. As we read Gaither and the way Gaither described it. But Tenbush does not even mention such a provision that you say that it was construing an identical provision. It was construing when the Court talked about the provisions that were controlling entirely different provisions. If it is indeed true, as we do not believe, that the conditions of probation were different in 1995 than they were when this probationer was put on probation, it does not make a difference for the reasons I explained. But let me just follow up, though. I'm having trouble now with saying where in Gaither this is. Perhaps you can show me that. Well, Gaither distinguishes Tenbush and reaffirms the Tenbush decision. If the Court would like, perhaps on rebuttal, I will cite the Court to the precise page of Gaither. And it reaffirms that the condition that was involved in Tenbush, which required the defendant to give truthful answers, and let us suppose for argument's sake it was the Murphy condition, that under Oregon law, that condition of truth-telling did not carry with it any penalty against the invocation of the privilege. The condition in Gaither, on the other hand, explicitly provided, and both the government and the probationer agree, that if he refused on any ground to divulge his prior criminality, his probation would be revoked and he would be incarcerated. I don't think anyone is disagreeing that the Murphy condition, if that were the condition, that the defendant here would lose if it were a Murphy condition. And if the Tenbush condition is, as you now say, a Murphy condition, it doesn't advance the dispute much either way. With your indulgence, Your Honor, I'm not conceding that Tenbush involved the Murphy condition. I was saying even if it did, there is no distinction that's relevant under Minnesota v. Murphy in this condition. I could equally argue that this condition is more lenient than Minnesota v. Murphy because he only had to truthfully answer all reasonable inquiries. And I could argue that it's not a reasonable inquiry if the inquiry states you must not exercise your Fifth Amendment privilege. But the point, again, is that what the State must do before it infringes the privilege is it must specifically punish not the failure to tell the truth, not the failure to answer questions, but it must punish the invocation of the privilege and it must communicate that to the probationer. And in this case, neither objectively or subjectively did the probationer was he in a position to believe that if he had invoked his privilege, he would be punished for it. My time has expired, Your Honor. Thank you, counsel. Thank you. May it please the Court? I'm Lisa Hay with the Federal Defender's Office, appearing for the appellee, Fatah Seychal. I think the Court hit it exactly right. This case comes down to the difference between the condition of probation in Murphy and the condition of probation as related to the difference between promptly and truthfully answering questions and truthfully answering questions. Well, it's not only the difference between promptly and truthfully, but the rest of the phrase as well, Your Honor. The phrase in Murphy is a status that you're required to be truthful in all matters. And you could increase, you could make that into a full sentence by saying it's a requirement that if you choose to answer, you must be truthful in all matters. It's a condition. Whereas in this case, the probationer was told that you must promptly and truthfully answer all inquiries. And I want to return for a moment. The government, I believe, incorrectly states that the condition is all reasonable inquiries. In this case, Mr. Seychal was told you must promptly and truthfully answer all inquiries. So in part, the emphasis is on the word all as well, that you can't make that into a condition, that if you want to answer, you must be truthful. It's a command. You must answer all inquiries. So that's the distinction, the promptly and truthfully are added force to the requirement that you must answer. And now the government says the condition in this case is a requirement that you answer all reasonable inquiries. And if that were true, that might also change the analysis. And I think that's a reason that this case does not. Well, why would it change the analysis if that doesn't have anything to do with whether you have a right not to answer an inquiry? Nobody's saying it's not a reasonable inquiry. The next paragraph in the conditions makes it clear you have to answer inquiries about firearms. So what difference does it make if it says the point is that it says you must answer all inquiries, either and if it says, like I said, material inquiries or reasonable inquiries. It wouldn't change the issue here. I don't think we even need to reach the question of whether the Oregon conditions of probation as written, which require answers to all reasonable inquiries, whether those violate Murphy. This is a case specifically about Mr. Seychell, because he was orally informed of the conditions of probation, and the oral explanation was simply all reasonable inquiries. And that's the case. I mean, oral was all inquiries. But I don't think it makes it. I don't think it makes any difference. The only reason it could make a difference, the government could argue that that would at least give somebody the idea that they could question, well, what is a reasonable inquiry? Maybe I have a right to not answer that. But nobody's arguing in this case about whether the inquiry is reasonable. It is a reasonable inquiry. That's correct, Your Honor. It is in this case because it related to the next condition of probation, which was can you possess firearms. Because it related to that, in addition, the defendant in this case had no way of believing that he could avoid answering that question. I have two questions. First, Murphy, the key sentence in Murphy seems to be the one that says, on its face, Murphy's probation condition prescribed only false statements. And then it says two things. It said nothing about his freedom to decline to answer particular questions. And in that respect, this is different. And certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution. And in that respect, it's not different. In other words, this condition did not expressly address the issue of whether he could or could not invoke his Fifth Amendment privilege. So really where we are is how can we tell which of those was the determinant consideration in Murphy? Well, perhaps Murphy offered there are alternative ways that a statement could be, a condition could violate the Constitution. Either one of those could have violated it is one way of reading Murphy. That it, this. Well, maybe Murphy just didn't decide this question, and we have to. That's possible as well, Your Honor. That the statement in Murphy, though, doesn't say one of those two is determinative. It says that it didn't do either of those two issues.  All right. Here's my second question. Okay. The, I gather that the only place where one would find a, what the penalty was if he didn't abide by the conditions is in the form he signed with regard to general conditions of supervision. Is that right? In other words, there's no suggestion that he was orally told anything about what would happen if he didn't do this. The probation officer denied that he did say anything to that effect, so it's true. Orally intake person. It's in the form. Right. The probation officer did agree, however, that failure to comply with the conditions would be a violation, and that's where the similarity to the Gaither case is important. In Gaither, the probation officer also testified that he never told the defendant and never led him to believe that a violation of the condition would result in imprisonment. I think the defendant in that case testified, but the probation officer's testimony was he never told him that. The Court nevertheless found that the condition was coercive because it's a fact that violation of the condition can result in replication of probation, just as in this case it's a fact that violation of the conditions can result in replication. Well, but this is what I was going to ask. The statement on the form isn't all that definitive. It says, I fully understand that, first of all, there's a long list of conditions, so nothing is directed at this condition in particular. And then it says, I agree to abide by and conform to them and fully understand that my failure to do so may result in arrest, modification of conditions, replication of probation, or imposition of structured intermediate sanctions. So essentially they're saying it may result in arrest or replication, and it also may not. Right? That's correct. And the same condition was at issue in Gaither, where they didn't say that absolutely you would get revoked. It said it's a violation of your probation. But then the question is what would happen as a result of that violation. So they used the same conditional language in Gaither to say you may get in prison for that. I wanted to point out that the government argues that there's no indication in the record that Mr. Seychell ever hesitated or tried to invoke his Fifth Amendment rights. And that's the argument of the dissent in Garrity, the crime case about the penalty situation. Murphy relies on Garrity. That's the case where the police officers are told that you must answer the questions or you'll lose your job. And that's the classic penalty case that the Supreme Court relies on. And the dissent in Garrity says, oh, but these police officers never said that they were hesitating. They never said that they were compelled by the statement to give their testimony. They seemed to willingly give their testimony. And the majority rejected that. The majority said, no, the problem is it's an unconstitutional condition, that the penalty situation is something we want to look at what the State actors are doing. And so we don't need to focus on the defendant. We focus on what the State actor has done. And in this case, the State actor chose to impose a condition on an uneducated and someone new to the probation system and to tell him that you are required to answer all of my inquiries. And that statement compelled the incriminating statements. And for that reason, the district court was correct in suppressing the statements. The courthouse already pointed out that 10 Bush does not actually create an authoritative answer to this question in Oregon. 10 Bush doesn't even refer to this specific condition of probation. And I think Gaither as well notes that the condition exists in that case, but they are construing a separate section because that's the one the defendant was most concerned about. Another distinction between this case and Murphy is that in Murphy, decided 20 years ago, the Supreme Court said they didn't know of any case in which a probationer actually had been punished for invoking his Fifth Amendment privilege. They said, in fact, that would be implausible or not reasonable for someone to believe that could happen. But today we know that that is plausible. We have the Antelope case where a defendant, in fact, invokes his Fifth Amendment privilege, said he did not want to incriminate himself. And the result was he went to jail. And so I think the evolving standards that we see what's happening with probationers is relevant here. In Murphy, they said it wouldn't even be reasonable to think he would get revoked and in today we know that that certainly is reasonable. The district court in this case correctly concluded and made the finding that Mr. Seaciao was not free to refuse to answer and noted that the probation officer insisted on his responses. Those findings are supported in the record and not clearly erroneous. Applying Murphy to those findings, it's clear the State created the classic penalty situation in this case and that Mr. Seaciao's statements were properly suppressed. This Court should affirm the district court ruling. If the Court has further questions, I'll respond. Thank you, counsel. The case just argued will be submitted. Thank you, counsel. Unless the Court just argued, the case just argued will be submitted. Thank you both very much. Thank you. Thank you.
judges: Reinhardt, Berzon, Bybee